IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EDWARD DAY, on behalf of his minor children, Edward Day, Jr. and Travis Day, Plaintiff, | )<br>)<br>)<br>) |
| vs | ) Civil Action 09-54 |
| GREENSBURG CENTRAL CATHOLIC, Defendant. | )<br>)<br>) |

REPORT AND RECOMMENDATION

I. Recommendation:

It is respectfully recommended that the defendant's motion to dismiss this action with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(A) (Document No. 42) be granted.

II. Report:

Presently before the Court is the defendant's motion to dismiss this case with prejudice on grounds that the plaintiff's allegation of poverty contained in his application to proceed in forma pauperis is untrue. For reasons discussed below, the defendant's motion to dismiss should be granted.

Plaintiff Edward Day, on behalf of his minor children, Edward Day, Jr. and Travis Day, has filed a complaint against defendant Greensburg Central Catholic (the "High School"), alleging that it discriminated against his children because of their race in violation of Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000d, et seq. The plaintiff complains that the High School, through its agents, officials and students, created a racially hostile environment for his children, and when it learned that his children were subjected to incidents of

race discrimination, it failed to take remedial acts to stop it. The Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331.

It is provided in 28 U.S.C. § 1914(a) that: "[t]he clerk of each district court shall require the parties instituting any civil action, suit or proceeding in such court ...to pay a filing fee of $350..." However, a court may authorize a person to commence and prosecute an action without prepayment of fees, if the person submits an affidavit that includes a statement of all assets he possesses and demonstrates he is unable to pay the filing fee. 28 U.S.C. § 1915(a)(1).

On January 15, 2009, in hopes of prosecuting this case without prepayment of fees, the plaintiff moved for leave to proceed in forma pauperis (his "ifp motion"), at which time he also submitted his complaint. In his ifp motion, the plaintiff stated under penalty of perjury that he was unable to pay the costs for commencement of his suit; that he was unemployed; and that he had one (1) dollar in cash. In his ifp motion, the plaintiff responded to queries about whether he had a salary, had any funds in a bank, or owned any valuable property (including real estate, stocks, bonds, notes or automobiles) by answering "N/A", i.e., not applicable.

It is clear that "[t]he decision to grant ifp status turns on whether an applicant is 'economically eligible' for such status." Taylor v. Supreme Court of NJ, 261 Fed.Appx. 399, 400 (3d Cir. 2008), quoting Sinwell v. Shapp, 536 F.2d 15, 19 (3d Cir. 1976). "A person need not be 'absolutely destitute' to proceed ifp", Taylor, supra, 261 Fed.Appx. at 400, quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948); "however, an affiant must show the inability to pay the filing and docketing fees". Taylor, 261 Fed.Appx. at 400-01, citing People Express Airlines, Inc., 886 F.2d 598, 601 (3d Cir. 1989). Based on the plaintiff's averments in his ifp motion, the Court issued an Order dated January 21, 2009, granting him leave to proceed

in forma pauperis and directing the clerk to file the complaint.

On March 10, 2009, attorney Keenan Holmes entered his appearance on behalf of the plaintiff. On August 26, 2009, Mr. Holmes' colleague, attorney Melissa Hall, entered her appearance on behalf of the plaintiff. During the course of discovery, the plaintiff was deposed, and he provided certain information in response to the defendant's interrogatories and discovery requests. As discussed below, the plaintiff's deposition testimony and information he provided during discovery contradict portions of his sworn statement made in his ifp motion.

For instance, at his deposition on December 21, 2009, the plaintiff testified that he owns several parcels of real property, as well as several automobiles, none of which were disclosed in his ifp motion. Regarding real property that he owns, the plaintiff testified at his deposition that he resides in a property located at 206 North Second Street in Jeannette, PA; that he purchased the property and has owned it for 11 years; that four years ago, the property was appraised at about $90,000; and that the remaining balance on his mortgage is approximately $60,000, such that he has about $30,000 in equity on the property.[1]

The plaintiff also testified that he owns real property located at 205 North Second Street in Jeannette (adjacent to his residence), which he acquired in 2002; that he purchased this property from the prior owner for $70,000; that the remaining balance on the mortgage is about $50,000; and that there is a residence on the property which he described as a "guest house".[2] According to the plaintiff's 2008 tax return, this property is listed as a "duplex" and rental

---

1. See, defendant's Exhibit G at pp. 34, 36-37 (attached to its motion to dismiss).

2. Id. at pp. 195-197.

property, from which the plaintiff and his wife received $7,200 in rent.[3]

The plaintiff's deposition testimony also reveals that he owns several other properties and parcels of land which he purchased, including in Pittsburgh, New Sewickley, North Huntingdon, New Stanton, and Jeannette, PA. As to the property in Pittsburgh, the plaintiff testified that he owns land at 7740 Frankstown Avenue; that he purchased the property about nine years ago for approximately $10,000 and has owned it continuously since then; that when he purchased the property, it had a residence on it, but he subsequently tore it down; and that the property has no mortgage and is deeded in his name.[4] According to the defendant, after the plaintiff was deposed, he produced a deed for the property at 7740 Frankstown Avenue, which shows that he purchased the property from Jan P. Jones in March 2003 for $4,500.[5]

As to the real property owned by the plaintiff in New Sewickley, PA, the record shows that he acquired the property through a Tax Claim Bureau Deed dated December 30, 2003; that he acquired the property at a public tax sale; and that he paid $323.96 for the property, which consists of 1.6 acres.[6] At his deposition, the plaintiff testified that he is not sure if he still owns the property, as the County initiated eminent domain proceedings on the property, for which he received a partial payment of $10,000 about three or four years ago.[7] The plaintiff believes he

---

3. See, defendant's Exhibit H at p. 4 (attached to its motion to dismiss).
4. See, defendant's Exhibit G at pp. 185-187, 190 (attached to its motion to dismiss).
5. See, defendant's Exhibit L (attached to its motion to dismiss).
6. See, defendant's Exhibit K (attached to its motion to dismiss).
7. See, defendant's Exhibit G at pp. 192-194 (attached to its motion to dismiss).

will also be paid at least $10,000 or $15,000 more for that property.[8]

The property which the plaintiff owns in North Huntingdon, PA was conveyed to him through a Tax Claim Bureau Deed dated December 29, 2003; the plaintiff acquired the property at a public tax sale, for which he paid $430.81.[9] When asked at his deposition what money he used to purchase the property, the plaintiff stated: "I just reached into my pocket and paid them."[10] The plaintiff avers that this property has not been appraised.[11]

As to the property that he owns in New Stanton, PA, the record shows that the plaintiff acquired it through a Tax Claim Bureau Deed dated December 30, 2003; that he purchased the property at a public tax sale, paying $500 for it; and that the property consists of 1.8 acres.[12] At his deposition, the plaintiff testified that there is a gas well on the New Stanton property; that the gas well has been on the property for 3 or 4 years and is operated by Columbia Gas Company or Equitable Gas Company; that he has a written agreement with the gas company, giving it permission to dig a well in exchange for its payment to him of monthly royalties; that the gas company has extracted gas from the property for 2-3 years, and it pays him royalties every month, but the amounts of the payments vary; and that in 2009, he received royalty payments from the gas company in an estimated amount of "$1300 ... give or take $500".[13]

---

8. Id. at p. 193.

9. See, defendant's Exhibit I (attached to its motion to dismiss).

10. See, defendant's Exhibit G at pp. 187-188 (attached to its motion to dismiss).

11. Id. at p. 189.

12. See, defendant's Exhibit J (attached to its motion to dismiss).

13. See, defendant's Exhibit G at pp. 202-204, 208-209 (attached to its motion to dismiss).

The plaintiff also testified that he owns real property located at 1207 Penn Avenue in Jeannette, PA; that he purchased the property in 2000 or 2001 for approximately $19,000; that there is a house on the property which has a mortgage in his name; that a woman lives in the house, and she was supposed to buy it; but that since the woman stopped making payments on the house, the property is supposed to be sold at a sheriff's sale.[14]

In addition, the plaintiff's 2008 tax return (filed jointly with his wife, Agnita Day) indicates that he owns several other rental properties, none of which were disclosed in his ifp motion. As listed in their 2008 tax return, the plaintiff and his wife own the following additional rental properties: a "single house" at 4 Vale Street; an "apartment" at 203 N. 2nd Street in Jeannette, PA, for which they received rent in the amount of $1,600; and a "rental triplex" at 419 Division Street.[15] The value of these rental properties is unknown, but the plaintiff and his wife claimed losses from these properties on their 2008 tax return.[16]

Just as he failed to disclose in his ifp motion that he owned certain real estate, so too did the plaintiff fail to disclose his ownership of several automobiles. When asked in his ifp motion if he owned any automobiles, the plaintiff answered under penalty of perjury "N/A". At his deposition, however, the plaintiff testified that he and his wife own several automobiles, including: a 1992 Cadillac Sedan Deville, having no outstanding loans or leases, a Windstar, having no outstanding loans or leases with a value of $900, a F-150 truck, a 1996 Toyota Tercel,

---

14.  Id. at pp. 195, 198-200.

15.  See, defendant's Exhibit H (attached to its motion to dismiss).

16.  Id.

and a 1976 Mercedes 300-D, all of which are registered in his name.[17]

In his ifp motion, the plaintiff also declared under penalty of perjury that he was not employed. Contrary to that declaration, the plaintiff testified at his deposition that for the past two years (2008-2009), he has worked as "executive special assistant" for Pastor Aiken at the Christian Fellowship and Zion Hill Churches; that in that role, he leads seminars and retreats, engages in counseling and is a consultant, for which he receives periodic paychecks; and that in both 2008 and 2009, he received payments for his work which exceeded $1,000, but he is uncertain if such payments exceeded $10,000.[18]

In addition, the plaintiff was asked in his ifp motion if he owned any stocks, bonds or other valuable property, and he answered "N/A". However, the plaintiff has a 401K retirement account with ING through his former employer, Cochran Motors, Inc., which is comprised of several stock mutual funds; it was valued at $1,806.18 as of December 31, 2009.[19]

The record also shows that the plaintiff's wife, Agnita Day, is employed by Giant Eagle as an assistant manager; that she is paid on a weekly basis and earns between $10.75 and $12.50 an hour; that after taxes, her weekly paycheck totals "$400 and change"; and that every week, Agnita Day gives money to the plaintiff from her paycheck to accommodate the needs of their household.[20]

Clearly, the plaintiff's deposition testimony is inconsistent with the sworn

---

17. See, defendant's Exhibit G at pp. 170-171, 178 (attached to its motion to dismiss).

18. Id. at pp. 44-45, 47-48.

19. See, defendant's Exhibit N (attached to its motion to dismiss).

20. See, defendant's Exhibit G at pp. 124-127 (attached to its motion to dismiss).

statements made in his ifp motion.[21] It is the defendant's position that the plaintiff materially misrepresented his financial condition in his ifp motion and thereby committed perjury on the Court. Hence, the defendant moves to dismiss this case pursuant to 28 U.S.C. § 1915(e)(2)(A).

It is provided in 28 U.S.C. § 1915(e)(2)(A): "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the Court determines that -- the allegation of poverty is untrue". Courts hold that if "the affiant's assertion of poverty is untrue, the mandatory language of 28 U.S.C. § 1915(e)(2)(A) requires that the Court dismiss the suit." Portis v. Geren, 2007 WL 2461799, *2 (M.D.Pa., Aug. 23, 2007), citing Thomas v. General Motors Acceptance Corp., 288 F.3d 305, 306 (7th Cir. 2002). Further, "in cases where a plaintiff has been found to have knowingly or intentionally made false statements in an affidavit supporting an application to proceed in forma pauperis, courts may dismiss the action with prejudice." Portis, supra, 2007 WL 2461799, at 2, n.3, citing Thomas, supra, 288 F.3d at 306; Mathis v. New York Life Ins. Co., 133 F.3d 546, 547-48 (7th Cir. 1998) (per curiam); Attwood v. Singletary, 105 F.3d 610, 612-13 (11th Cir. 1997) (per curiam); Romesburg v. Trickey, 908 F.2d 258, 260 (8th Cir. 1990); and Thompson v. Carlson, 705 F.2d 868 (6th Cir. 1983) (per curiam).

Here, based on the plaintiff's sworn deposition testimony, it appears that the allegation of poverty in his ifp motion is untrue. As discussed above, the record shows that the plaintiff owns myriad parcels of real property, several of which have residences on them, some of

---

21. Needless to say, the plaintiff's former attorneys, Mr. Holmes and Ms. Hall, also found inconsistencies in his deposition testimony and the sworn statements made in his ifp motion, and they expressed their concerns to him about it. When the plaintiff disagreed that inconsistencies existed in his sworn statements, attorneys Holmes and Hall moved to withdraw as counsel (Doc. No. 39), and the Court granted their request (Doc. No. 40).

which are used as rental properties, others that have no mortgages on them, and one that has a gas well on it which provides him with a monthly royalty payment.

Still, in response to the defendant's motion to dismiss, the plaintiff asserts -- in conflict with his sworn deposition testimony -- that he has no equity in his residence, has turned over several parcels of real property to family members, and has not received royalties of any kind. However, the plaintiff has not submitted adequate proof of those statements, and based on his contradictory representations in this case, his averments lack credibility.[22]

The record also shows that the plaintiff and his wife receive income from their work. As set forth in his deposition, the plaintiff testified that in 2008 and 2009, he received periodic payments for his work for Christian Fellowship and Zion Hill, but he was unsure if the annual payments exceeded $10,000. As for his wife, the plaintiff testified that she is employed by Giant Eagle and receives a weekly paycheck which, after taxes, amounts to "$400 and change" (or approximately $21,000 per year), and that every week, she gives him money from

---

22. For instance, in response to the defendant's motion to dismiss, the plaintiff submitted a hand-written statement dated February 22, 2003, in which he purports to give his automobiles to his wife and unidentified "properties that are just land" to his children. However, as the defendant points out in its reply brief (at pp. 3-4), the plaintiff has not produced deeds or titles that reflect these alleged conveyances; rather, all the deeds that the plaintiff has produced identify him, or him and his wife (Agnita Day), as the owners of the properties, and all tax bills he has submitted identify him as the owner of all parcels of the real property. As to the plaintiff's claim that he never received royalties from the gas well on his New Stanton property, he produced a Form 1099-MISC for 2009 which shows the receipt of $3,564.16 in royalties from Burgly Gas & Oil Company which purportedly belong to his son, Edward Day. Notably, the plaintiff's son, Edward Day, is a minor, and the defendant avers that the plaintiff has not submitted documents pursuant to the Pennsylvania Uniform Transfers to Minors Act, 20 Pa.C.S. § 5301, et seq., to evince that his son holds an interest in the gas well. Further, the defendant points out that the plaintiff did not attach documentation that reflects the receipt of royalties in 2008, nor did he submit any evidence, such as a deed or contract with Burgly Gas & Oil Company, to indicate who has an interest in the gas well.

her paycheck to support the needs of their household.

The plaintiff and his wife also own at least five vehicles, none of which are said to have outstanding loans or leases. In addition, the plaintiff has a 401K retirement account through his former employer which, as of December 31, 2009, was valued at over $1,800.

Based on these facts -- which contradict the plaintiff's assertion of poverty in his ifp motion -- the plaintiff has not made the required showing of an inability to pay the Court's filing fee. Furthermore, it appears that the plaintiff knowingly made false statements in his ifp motion, such as when he claimed he had only $1.00 in cash, and answered "N/A" to a query of whether he owned any real estate, stocks, bonds, notes or automobiles.

As recited above, if an affiant's allegation of poverty in his ifp motion is untrue, "the mandatory language of 28 U.S.C. § 1915(e)(2)(A) requires that the Court dismiss the suit." Portis, 2007 WL 2461799, at *2, citing Thomas, 288 F.3d at 306. Further, "in cases where a plaintiff has been found to have knowingly or intentionally made false statements in an affidavit supporting an application to proceed in forma pauperis, courts may dismiss the action with prejudice." Portis, 2007 WL 2461799, at 2, n.3 (citing cases).

Therefore, for reasons discussed above, it is recommended that the defendant's motion to dismiss this action with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(A) (Document No. 42) be granted.

Within fourteen (14) days, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may

constitute a waiver of any appellate rights.

                                                 Respectfully submitted,

                                                 s/ ROBERT C. MITCHELL
                                                 United States Magistrate Judge

June 4, 2010